# In the United States Court of Federal Claims

No. 09-112 C
(Filed: August 30, 2012)

```
*************************************
ATKINS NORTH AMERICA, INC.,         *
                                    *
            Plaintiff/Counterdefendant,  *
                                    *
 and                                *
                                    *   Cross-Motions for Summary Judgment;
MACTEC ENGINEERING AND              *   Validity of Contracting Officer's Decision;
CONSULTING, INC.,                   *   Independent Judgment; Timing and
                                    *   Conclusory Nature of Contracting
            Counterdefendant,       *   Officer's Declaration
                                    *
 v.                                 *
                                    *
THE UNITED STATES,                  *
                                    *
            Defendant/Counterclaimant.  *
*************************************
```

Thomas M. Brownell, McLean, VA, and Dominic C, MacKenzie, Jacksonville, FL, for plaintiff/counterdefendant.

David A. Dial, Atlanta, GA, for counterdefendant.

Timothy P. McIlmail, United States Department of Justice, Washington, DC, for defendant/counterclaimant.

## OPINION AND ORDER

**SWEENEY**, Judge

In this case, an engineering design firm challenges the government's claim for damages resulting from a purportedly faulty design. The sole issue presented by the parties' cross-motions for summary judgment is whether the contracting officer's decision on the government's claim is valid. Because the contracting officer exercised independent judgment by becoming familiar with the facts and conclusions contained in the decision and adopting them as her own, the court concludes that it is. Accordingly, the court grants defendant's motion.

# I. BACKGROUND

On October 5, 1999, the United States Corps of Engineers ("Corps") awarded an indefinite-delivery architect-engineer contract to Post, Buckley, Schuh & Jernigan, Inc. ("PBS&J"), now known as Atkins North America, Inc. ("Atkins"). App. 1, 30. Under that contract, the Corps issued PBS&J a task order for the preparation of plans and specifications for the Ten Mile Creek Project located in St. Lucie County, Florida. Id. at 2. The project had two components: a storm water runoff area to "reduce the surge of freshwater into the Indian River Lagoon estuary" and a treatment cell to "attenuate the concentration of phosphorus and other nutrients in the runoff water." Id. at 4. PBS&J retained Law Engineering and Environmental Services, Inc., the predecessor in interest of MACTEC Engineering and Consulting, Inc. ("MACTEC"), to provide it with geotechnical investigation, analysis, and design services for the project. Id. at 29-30. On May 1, 2002, PBS&J delivered its final plans and specifications for the project to the Corps. Id. at 6.

The Corps awarded the construction contract for the project on September 26, 2003, id. at 50, but did not retain PBS&J to provide any services during construction, id. at 2. Construction spanned from November 2003 through January 2006. Id. at 12, 50. The Corps began to fill the storm water reservoir in July 2006, first to an elevation of nineteen feet and then to an elevation of twenty-three feet. Id. at 12. It did not raise the water level to the design elevation of twenty-nine feet. Id. at 13.

On October 22, 2007, the Corps informed PBS&J by letter that it had "identified a potential claim for errors and omissions" related to PBS&J's work on the Ten Mile Creek Project. Id. at 315. It explained: "We believe a design deficiency may exist related to reservoir embankment seepage and slope stability and the erosion protection provided at the base of the soil cement apron inside the impoundment." Id. The Corps requested a response from PBS&J within five days explaining PBS&J's "intended course of action . . . to resolve this matter." Id. PBS&J responded by letter dated October 26, 2007, indicating that it had been working with the Corps to determine the existence of deficiencies "relating to soil stability or seepage" and that its subconsultant MACTEC would be performing additional analysis. Id. at 316.

PBS&J and the Corps continued to exchange correspondence through the beginning of 2008. Id. at 317-35. In a February 22, 2008 letter signed by the contracting officer, Griselle Gonzalez, the Corps notified PBS&J that it intended to "pursue an architect-engineer liability action against [it] related to the services provided" for the Ten Mile Creek Project. Id. at 336-40. The Corps identified seven areas in which it believed that PBS&J was liable for damages: "Seepage Management"; "Soil-cement Apron Stability against Uplift"; "Erosion at the Base of the Soil-cement Apron"; "Erosion of the Downstream Side Slope"; "Erosion at the discharge of the STA into Canal 96"; "Survey Issues"; and "Pump Station 382 Wall Dimensions." Id. at 336-38. It also provided an estimate of the damages it planned to assess against PBS&J: $15,698,859.66. Id. at 338-40. PBS&J responded to this letter on February 28, 2008. Id. at 341-44.

Ms. Gonzalez issued the contracting officer's final decision on March 28, 2008.  Id. at 47-76.  The decision was divided into six sections: "Claims"; "Findings of Fact"; "Computation of Damages"; "The Government's Right to file a Claim"; "Contracting Officer's Analysis"; and "Notice of Appeal Rights."  Id.  In the first section, "Claims," Ms. Gonzalez reiterated the seven areas in which the Corps asserted that PBS&J was liable for damages.  Id. at 47-49.  In the "Findings of Fact" section, she briefly described the history of the relevant contract and task order and then, in more detail, described the correspondence exchanged between PBS&J and the Corps from October 2007 through February 2008.  Id. at 49-53.  In the "Computation of Damages" section, Ms. Gonzalez summarized the damages incurred by the Corps–$15,698,859.66–and then allocated those damages among the seven areas of alleged liability.  Id. at 53-69.  In the final three sections, she set forth the government's right to assert a claim against a contractor, explained the basis of her liability findings, and described PBS&J's right to appeal the decision.  Id. at 70-76.

Exercising its right to seek review of the contracting officer's decision, PBS&J filed a complaint in the United States Court of Federal Claims ("Court of Federal Claims") on February 23, 2009.  Because PBS&J had not yet paid any of the $15,698,859.66 in damages assessed by the Corps, defendant filed a counterclaim based on the contracting officer's decision.  MACTEC joined the suit as a counterdefendant on November 5, 2009.

On October 22, 2009, PBS&J deposed Ms. Gonzalez to ascertain the basis of the contracting officer's decision that she issued.  Id. at 77, 141-42.  With respect to her education and experience, Ms. Gonzalez testified that she has a degree in finance and is a licensed, but nonpracticing, certified public accountant in the state of Georgia.  Id. at 81.  She further explained that she has held an unlimited warrant as a contracting officer for approximately ten years, and a level three contracting officer certification for at least five or six years.  Id.  She stated that she is not an engineer or a lawyer, and has no experience in design, geotechnical engineering, slope stability issues, or seepage management.  Id. at 84-85.

Ms. Gonzalez then explained the origins of the substantive elements of the contracting officer's decision.  She stated that pursuant to chapter seven of the Corps' Engineer Pamphlet 715-1-7, an Architect-Engineer Responsibility Management Board, which consisted of the chief counsel, the chief of the contracting division, the chief of engineering, and the chief of construction, reviewed PBS&J's performance to determine whether PBS&J was liable for any design deficiencies.  Id. at 91, 124; see also id. at 347-57 (containing chapter seven of the pamphlet).  After its review, the board described its findings and recommendations in a case document.  Id. at 146, 173-75; see also id. at 283-307 (containing the case document).  The case document was prepared with input from engineering, estimating, construction, and legal personnel, and was signed by the chief of engineering in February 2008.  Id. at 106-09.

Next, Ms. Gonzalez testified, pursuant to Corps policy, an attorney from the Corps' office of counsel drafted the contracting officer's decision.  Id. at 145, 170; see also id. at 242-44 (containing the relevant provisions from the Engineer Federal Acquisition Regulation

Supplement ("EFARS")).  The attorney incorporated, word for word, portions of the case document into the decision.[1]  Id. at 144, 181.  She also incorporated, word for word, portions of a report prepared by an expert hired by the Corps.[2]  Id. at 191, 193-94.  The attorney provided Ms. Gonzalez with a preliminary draft of the decision.  Id. at 152.  Ms. Gonzalez reviewed the draft and commented that it contained more case law than was necessary.  Id.

Eventually, the attorney provided Ms. Gonzalez with a final draft of the contracting officer's decision.  Ms. Gonzalez testified that prior to approving the draft decision, she reviewed it to ensure that it was factually correct.  Id. at 146.  She did so primarily by comparing it to the case document to ensure that the findings from the case document were incorporated into the draft decision verbatim.  Id. at 155, 194.  Indeed, Ms. Gonzalez repeatedly stated that the case document was the main document on which she relied when reviewing the draft decision.  Id. at 108, 139, 143, 147-49, 155-56, 160-61, 170-72, 175, 183, 191, 195.  However, she also relied on and referred to correspondence between the Corps and PBS&J from October 2007 through February 2008, id. at 121-22, relevant contract clauses, id. at 125-26, the EFARS, id. at 96-97, and the Federal Acquisition Regulation ("FAR"), id. at 129-30.  These documents–the case document, correspondence, contract clauses, and regulations–were the only documents Ms. Gonzalez relied on and referred to when reviewing the draft decision.  Id. at 97, 116, 128, 165.

Ms. Gonzalez further stated that in reviewing the draft decision, she consulted with the attorney who prepared it and relied on the attorney's advice.  Id. at 147, 155, 192-94.  She also consulted with the Corps' technical staff,[3] id. at 147, and relied on and agreed with the findings that the staff set forth in the case document, id. at 146, 192-93.  Ultimately, the only changes she made to the draft decision were related to punctuation and grammar.  Id. at 152.

--------

[1]  The evidence submitted by plaintiff indicates that claims five and seven in the "Claims" section of the contracting officer's decision were copied, with only minor changes, from the "Description of the Potential Liability Issues" section of the case document.  Compare App. 48-49 (contracting officer's decision), with id. at 285 (case document).  In addition, paragraphs one through fourteen and paragraph twenty in the "Findings of Fact" section of the contracting officer's decision were copied, with only minor changes, from the "Background" and "Correspondence with PBS&J" sections of the case document.  Compare id. at 49-52 (contracting officer's decision), with id. at 283-87 (case document).  And, the "Computation of Damages" section of the contracting officer's decision was copied, with only minor changes, from the "Computation of Damages" section of the case document.  Compare id. at 53-69 (contracting officer's decision), with id. at 287-302 (case document).

[2]  The evidence submitted by plaintiff indicates that the first four claims in the "Claims" section of the contracting officer's decision were copied, with only minor changes, from the expert report.  Compare App. 47-48 (contracting officer's decision), with id. at 370-71 (expert report).

[3]  Ms. Gonzalez did not testify regarding the scope or duration of those consultations.

Ms. Gonzalez testified that the actions just described–reviewing the draft, consulting with the attorney and technical staff, and correcting grammar and punctuation–took between one week and one month to accomplish, id. at 170-71, and constituted all that she did prior to signing the final contracting officer's decision, id. at 155.  She did not review or rely on the expert report or even know that one existed.  Id. at 139-40, 191-92.  She also did not review or rely on the materials prepared by the Corps in connection with the project, id. at 143, 147, drawings or photographs, id. at 147, 149, field data, id. at 148, 159-60, progress meeting notes or minutes, id. at 149, cost estimates or supporting data, id. at 150-51, 165-70, or materials submitted by PBS&J, id. at 156, 158-59.  Nor did she conduct a site visit, perform any tests or calculations, or interview anyone–either from PBS&J or the Corps.  Id.  Nevertheless, Ms. Gonzalez testified that the decision constituted her independent findings.  Id. at 147.

Atkins–having changed its name from PBS&J during the pendency of this litigation–and MACTEC challenge Ms. Gonzalez's characterization of the contracting officer's decision. Arguing that the decision was invalid because it did not represent Ms. Gonzalez's independent judgment and did not reflect that PBS&J was afforded impartial, fair, and equitable treatment, they filed a joint motion for summary judgment on defendant's counterclaim pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC").  Defendant cross-moved for partial summary judgment, requesting that the court find Ms. Gonzalez's decision to be valid. Attached to defendant's motion was a brief, four-paragraph sworn declaration from Ms. Gonzalez dated December 7, 2011.  In that declaration, Ms. Gonzalez avers that she attended a meeting of the Architect-Engineer Responsibility Management Board regarding PBS&J's potential liability on November 27, 2007, that before she issued the contracting officer's decision, she "became familiar with all facts and proposed conclusions contained in the draft and adopted them as [her] findings of fact and decision," and that the contracting officer's decision represented her "independent judgment."  Decl. Griselle Gonzalez ¶¶ 3-4.  The court heard argument on the parties' cross-motions on April 30, 2012.  During oral argument, defendant challenged, for the first time, the court's authority to invalidate or set aside a contracting officer's

decision.[4]  The parties submitted supplemental briefs on this issue and the court is now prepared to rule.

## II.  DISCUSSION

### A.  Motions for Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  RCFC 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is genuine if it "may reasonably be resolved in favor of either party."  Id. at 250.

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  The nonmoving party then bears the burden of showing that there are genuine issues of material fact for trial.  Id. at 324.  Both parties may carry their burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  RCFC 56(c)(1).

The court must view the inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party.  Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, the court must not weigh the evidence or make findings of fact.  See Anderson, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not

---

[4]  The only reference to jurisdiction in defendant's response and cross-motion for partial summary judgment is the following:

> [T]he issue before the court is whether the March 28, 2008 contracting officer's final decision establishes the Court's jurisdiction to entertain an affirmative Government claim pursuant to the Contract Disputes Act ("CDA"); that is, whether the Government claim against a contractor in this action is the subject of a decision by the contracting officer. . . .  Because the Government's claim in this action is the subject of the contracting officer's March 28, 2008 contracting officer's final decision, the Court possesses jurisdiction to entertain the Government's claim.

Resp. & Cross-Mot. 8.  In other words, defendant argued that the contracting officer's decision was sufficient to establish jurisdiction in this court under the CDA.  It did not argue that the court was without the authority to invalidate the contracting officer's decision.

himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1376 (Fed. Cir. 2002) ("On summary judgment, the question is not the 'weight' of the evidence, but instead the presence of a genuine issue of material fact . . . ."), abrogated on other grounds by Egyptian Goddess, Inc. v. Swish, Inc., 543 F.3d 665 (Fed. Cir. 2008) (en banc); Ford Motor Co. v. United States, 157 F.3d 849, 854 (Fed. Cir. 1998) ("Due to the nature of the proceeding, courts do not make findings of fact on summary judgment."); Mansfield v. United States, 71 Fed. Cl. 687, 693 (2006) ("[T]he Court may neither make credibility determinations nor weigh the evidence and seek to determine the truth of the matter. Further, summary judgment is inappropriate if the factual record is insufficient to allow the Court to determine the salient legal issues."). Entry of summary judgment is mandated against a party who fails to establish "an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. However, if neither party meets this burden on the filing of cross-motions for summary judgment, then the court must deny both motions. See, e.g., Canal 66 P'ship v. United States, 87 Fed. Cl. 722, 723 (2009); Dick Pac./GHEMM, JV v. United States, 87 Fed. Cl. 113, 126 (2009).

### B. The Court Has the Authority to Determine the Validity of a Contracting Officer's Decision

As an initial matter, the court must address whether it has the authority to invalidate or set aside a contracting officer's decision. Defendant asserts that the court lacks such authority. Instead, it argues, if the court finds that the "contracting officer's final decision is not that of the contracting officer," then the only action it can take is to dismiss the case for lack of jurisdiction. Def.'s Supplemental Br. 1. In short, defendant contends both that the court cannot declare that a contracting officer's decision is invalid and that the court must dismiss a case in the absence of a valid contracting officer's decision. Its argument is not easy to parse, but to the extent that defendant is asserting that the court cannot award declaratory relief in the absence of jurisdiction, its position represents black-letter law. See Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). And, if defendant is merely asserting that the court cannot award declaratory relief except in circumstances not present here, see 28 U.S.C. §§ 1491(a)(2), (b)(2), 1507 (2006),[5] it is once again correct. See Bowen v. Massachusetts, 487

_____

[5] Under 28 U.S.C. § 1491(a)(2), the court may "render judgment upon any claim by or against, or dispute with, a contractor arising under" the CDA, "including . . . nonmonetary disputes on which a decision of the contracting officer has been issued . . . ." In other words, the court may only award nonmonetary relief on the merits of a claim or dispute if there is a valid contracting officer's decision. It necessarily follows that the court cannot provide nonmonetary relief before ruling on the merits. The parties' cross-motions for partial summary judgment do not concern the merits of their dispute–whether the government is entitled to damages for a purportedly faulty design–but instead relate to the validity of the contracting officer's decision.

U.S. 879, 905 & n.40 (1988); Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec., 490 F.3d 940, 943 (Fed. Cir. 2007); Kanemoto v. Reno, 41 F.3d 641, 645 (Fed. Cir. 1994). However, if defendant is contending that the court is altogether precluded from invalidating a contracting officer's decision, it is mistaken.

Under the CDA, the court has jurisdiction over a claim only if there is a contracting officer's decision on, or deemed denial of, that claim. See, e.g., England v. Swanson Grp., Inc., 353 F.3d 1375, 1379 (Fed. Cir. 2004) (holding that "jurisdiction over an appeal of a contracting officer's decision is lacking unless . . . that officer renders a final decision on the claim"); Paragon Energy Corp. v. United States, 645 F.2d 966, 971 (Ct. Cl. 1981) ("[T]o invoke the jurisdiction of this court . . . there must first be a 'decision' (or failure to decide) by the contracting officer."). In issuing a decision, the contracting officer must satisfy the procedural and substantive requirements set forth in the CDA.[6] See 41 U.S.C. § 605(a), (c)(1)-(3) (1994).[7] A failure to satisfy these requirements may render the decision invalid. Compare Case, Inc. v. United States, 88 F.3d 1004, 1009 (Fed. Cir. 1996) ("A contracting officer's final decision is invalid when the contracting officer lacked authority to issue it."), and Sharman Co. v. United States, 2 F.3d 1564, 1570-71 (Fed. Cir. 1993) (holding that a letter that did not clearly indicate that it was a final decision did not constitute a valid contracting officer's decision), overruled on other grounds by Reflectone, Inc. v. Dalton, 60 F.3d 1572 (Fed. Cir. 1995) (en banc), and Fireman's Fund Ins. Co. v. United States, 92 Fed. Cl. 598, 698 (2010) (holding that the contracting officer's failure to comply with the FAR rendered her decision invalid), with Alliant Techsys., Inc. v. United States, 178 F.3d 1260, 1268 (Fed. Cir. 1999) ("A letter can be a final decision under the CDA even if it lacks the standard language announcing that it constitutes a final decision."), and Placeway Constr. Corp. v. United States, 920 F.2d 903, 907 (Fed. Cir. 1990) ("The decision is no less final because it failed to include boilerplate language usually present for the protection of the contractor."). If the decision is invalid, then the court lacks jurisdiction to rule on the underlying claim. See Case, Inc., 88 F.3d at 1009 ("[A]n invalid contracting officer's decision may not serve as the basis for a CDA action."); Daff v. United States, 78 F.3d 1566, 1571 (Fed. Cir. 1996) ("A valid contracting officer's decision is a prerequisite for a suit under the CDA."); see also N.Y. Shipbldg. Corp. v. United States, 385 F.2d 427, 437 (Ct. Cl. 1967) ("No proper initial decision has been rendered administratively, there is nothing from which to appeal, and there is nothing for the appeal board to consider."). Accordingly, the court has the authority to rule on the validity of a contracting officer's decision

---

Therefore, the exception to the general prohibition against declaratory relief described in 28 U.S.C. § 1491(a)(2) does not apply to this ruling.

[6] The court discusses these requirements in more detail below.

[7] All citations to the CDA are to the version of the CDA in effect on the date that PBS&J and the Corps executed the architect-engineer contract–October 5, 1999. Congress has since recodified title forty-one of the United States Code, revising and renumbering the provisions of the CDA. See Pub. L. No. 111-350, §§ 7101-7109, 124 Stat. 3677, 3816-26 (2011).

as part of its jurisdictional inquiry.  See also Renda Marine, Inc. v. United States, 509 F.3d 1372, 1380 (Fed. Cir. 2007) (noting that a court "may declare a contracting officer's final decision invalid–for whatever reason").

Although defendant recognizes that the court can assess the validity of a contracting officer's decision as part of its jurisdictional inquiry, it appears to argue that if the court grants summary judgment for Atkins and MACTEC on the issue of validity, such a ruling would constitute a legally impermissible declaratory judgment.  Defendant is again mistaken.  A determination that the contracting officer's decision is invalid as a matter of law, without more, is nothing more than a legal holding, and would not result in the entry of a declaratory judgment, or any other judgment.[8]  See RCFC 57 (noting that the rules related to judgments in the Court of Federal Claims apply to declaratory judgments); RCFC 58(b) (noting that the clerk of court may not enter judgment without the court's approval unless "the court awards only costs or a sum certain" or "the court denies all relief").  Indeed, in their motion, Atkins and MACTEC merely request that the court, given the undisputed facts, find that the contracting officer's decision issued by Ms. Gonzalez is invalid, and "grant such further relief as it deems just and proper."[9]  Mot. 19.  They do not specifically request dismissal of defendant's counterclaim, which is premised on the contracting officer's decision, for lack of jurisdiction.  Thus, if the court found the contracting officer's decision to be invalid, it could, sua sponte, conclude that it lacks jurisdiction over all claims based on the contracting officer's decision, dismiss both the complaint and the counterclaim for lack of jurisdiction, and direct the entry of judgment.  Alternatively, rather than directing the entry of judgment, the court could order Atkins and MACTEC to move for dismissal on jurisdictional grounds or order defendant to show cause why the case should not be dismissed for lack of jurisdiction.  Ultimately, however, the court need not decide among these courses of action because, as set forth below, the undisputed facts demonstrate that the contracting officer's decision issued by Ms. Gonzalez is valid.

--------

[8]  Moreover, defendant does not explain how the finding of invalidity sought by Atkins and MACTEC in their motion for summary judgment would constitute a declaratory judgment, while the finding of validity that it seeks in its cross-motion for summary judgment would not constitute a declaratory judgment.

[9]  Because Atkins and MACTEC request only a ruling of invalidity and nothing more, their motion is more properly termed a motion for partial summary judgment than a motion for summary judgment.  Rulings on motions for partial summary judgment are not appealable final judgments.  Syntex Pharms. Int'l, Ltd. v. K-Line Pharms. Ltd., 905 F.2d 1525, 1526 (Fed. Cir. 1990).

### C.  The Contracting Officer's Decision Issued by Ms. Gonzalez Is Valid

### 1.  Contracting Officer Decisions

Under the CDA, a government claim against a contractor is perfected by the issuance of a written decision by the contracting officer.  41 U.S.C. § 605(a).  With respect to the contents of the decision, the CDA provides: "The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter.  Specific findings of fact are not required, but, if made, shall not be binding in any subsequent proceeding."  Id.  It further provides:

> The decision of a contracting officer on submitted claims shall be issued within a reasonable time, in accordance with regulations promulgated by the agency, taking into account such factors as the size and complexity of the claim and the adequacy of the information in support of the claim provided by the contractor.

Id. § 605(c)(3); accord FAR 33.211(d) (1999).  As Congress explained prior to enacting the law, the CDA "describes explicitly the decisionmaking role of the contracting officer."  S. Rep. No. 95-1118, at 21 (1978).  Congress recognized, however, that

> [w]hile the objective may be to make the contracting officer the focal point for decisions, practicability dictates that the extent to which the contracting officer relies on his own judgment or abides by the advice or determination of others is dependent on a variety of factors, including the officer's personal knowledge, capability, and executive qualities, as well as the nature of the particular procurement.  With so many variables, it is impossible to generalize as to what the contracting officer's role should be in all situations.

Id.

The FAR expands upon the CDA's requirements.  First, it describes the steps a contracting officer is required take when the government intends to assert a claim against a contractor: the contracting officer must review the pertinent facts, secure assistance from the appropriate advisors, coordinate with the office administering the contract, and prepare a written decision.  FAR 33.211(a).  Second, it sets forth what must be included in the decision: a description of the government's claim, reference to the relevant contract terms, a description of the factual areas of agreement or disagreement, a statement of the contracting officer's decision and rationale, a notice of the contractor's appeal rights, and a demand for payment, if appropriate.  FAR 33.211(a)(4).  Third, it explicitly requires contracting officers to "[r]equest and consider the advice of specialists in audit, law, engineering, transportation, and other fields, as appropriate," in carrying out their duties.  FAR 1.602-2(c).  Finally, it provides that the contracting officer must "[e]nsure that contractors receive impartial, fair, and equitable treatment[.]"  FAR 1.602-2(b); see also Penner Installation Corp. v. United States, 89 F. Supp. 545, 547 (Ct. Cl. 1950)

("[T]he contracting officer must act impartially in settling disputes.  He must not act as a
representative of one of the contracting parties, but as an impartial, unbiased judge."), aff'd by an
equally divided court, 340 U.S. 898 (1950).

The EFARS, in turn, expands upon the requirements of the CDA and the FAR.  It
specifies that an attorney from the Corps' office of counsel will draft the contracting officer's
decision.  EFARS A3-203(d)(1)(b).  It further indicates that the decision must include a
"Findings of Fact" section that sets forth the relevant facts.  EFARS A3-203(d)(1).  An office of
counsel attorney, with technical assistance from appropriate staff members, must draft this
section.  EFARS A3-203(d)(1)(a).  Finally, prior to issuing the decision, the contracting officer
must "become familiar with all facts and proposed conclusions contained in the draft and either
adopt them as the Findings of Fact and decision or make such changes as deemed appropriate."
EFARS A3-203(d)(1)(b).

The courts and boards of contract appeals have further elucidated the requirements for
contracting officer decisions and the extent of the contracting officer's involvement in issuing
those decisions.  Most importantly, a decision must represent the contracting officer's
independent judgment.  See Pac. Architects & Eng'rs Inc. v. United States, 491 F.2d 734, 744
(Ct. Cl. 1974) (quoting N.Y. Shipbldg. Corp., 385 F.2d at 435 (holding that a contracting officer
must "put his own mind to the problems and render his own decisions")); N. Star Alaska Hous.
Corp. v. United States, 76 Fed. Cl. 158, 209 (2007) ("[A] contracting officer may not forsake his
duties, but rather must ensure that his decisions are the product of his personal and independent
judgment."); CEMS, Inc. v. United States, 65 Fed. Cl. 473, 479 (2005) (noting that the
contracting officer "failed to take ownership of all determinations included in the final
contracting officer's opinion"); see also Air-O-Plastik Corp., GSBCA 4802 et al., 81-2 BCA
¶ 15,338 ("Usually a holding that a given decision does not represent the independent judgment
of the contracting officer is reached only when the purported decision is imposed by higher
authority or when the contracting officer completely abandons his decisional responsibility to
another.").  To inform that judgment, contracting officers are entitled to obtain technical and
legal advice.  See Pac. Architects & Eng'rs Inc., 491 F.2d at 744 (noting that when a contracting
officer is preparing a decision, there is "no implied prohibition against his first obtaining or even
agreeing with the views of others"); Barringer & Botke, IBCA 428-3-64, 65-1 BCA ¶ 4,797
("[A] contracting officer may, for the purpose of forming his independent judgment, obtain
information and advice from his staff offices and advisors, particularly in the areas of law,
accounting and engineering, in which fields he may have little or no expertise.").  However,
contracting officers may not substitute the judgment of others for their own independent
judgment.  See N.Y. Shipbldg. Corp., 385 F.2d at 435 (holding that it is improper for a
contracting officer to "merely rubber-stamp[] a subordinate's or superior's findings"); CEMS,
Inc., 65 Fed. Cl. at 480 ("Although a contracting officer may review claims using in-house
assistance, he must still understand and be persuaded by the determination made in his
contracting officer's final decision."); Jamco Constructors, Inc., VABCA 3271, 94-1 BCA
¶ 26,405 ("[A] contracting officer may not abdicate his responsibility by accepting any opinion

offered without subjecting it to some analysis–particularly where he is, or should be, aware of
information which calls that opinion into question.").

## 2. Ms. Gonzalez's Declaration

As an initial matter, the court must determine whether the declaration of Ms. Gonzalez
offered by defendant is properly before the court.  Atkins and MACTEC contend that the
statements in the December 7, 2011 declaration are materially inconsistent with the testimony
Ms. Gonzalez provided during her October 22, 2009 deposition.  They also assert that the
declaration contains conclusory, unsupported statements on the ultimate issue presented in the
cross-motions.  Therefore, they argue, the court should disregard the declaration.  Defendant, on
the other hand, asserts that the declaration complements, rather than contradicts, Ms. Gonzalez's
deposition testimony.  It also contends that Ms. Gonzalez does not render a statement on the
ultimate issue–whether the final decision is valid–but instead describes the steps she took to
arrive at her decision.

In arguing that Ms. Gonzalez's statements in the declaration are materially inconsistent
with her deposition testimony, Atkins and MACTEC rely on Texas National Bank v. United
States, 86 Fed. Cl. 403 (2009).  In that case, the plaintiff's president/chief executive officer
testified during her deposition that she did not know whether a document had been sent to the
defendant, but then, in a subsequent declaration, stated that she was confident that document had
been sent to the defendant.  Id. at 411-12.  The court held that where "there is no evidentiary
support for [the] assertion in [the] declaration . . . and [the] declaration is inconsistent with [the]
earlier deposition testimony, [the] declaration cannot create a triable issue of fact . . . ."  Id. at
412.  This holding is consistent with case law from other circuits.  See, e.g., Radobenko v.
Automated Equip. Corp., 520 F.2d 540, 544 (9th Cir. 1975) (agreeing that no genuine issues of
fact were raised by an affidavit submitted in opposition to a motion for summary judgment that
contradicted prior deposition testimony); Perma Research & Dev. Co. v. Singer Co., 410 F.2d
572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise
an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this
would greatly diminish the utility of summary judgment as a procedure for screening out sham
issues of fact.").

In paragraph three of her declaration, Ms. Gonzalez states that she attended a November
27, 2007 meeting of the Architect-Engineer Responsibility Management Board regarding
PBS&J's potential liability.  Atkins and MACTEC contend that this statement is contrary to Ms.
Gonzalez's deposition testimony that the sole basis for the contracting officer's decision was the
case document.  However, this characterization of Ms. Gonzalez's testimony is too narrow.
Although Ms. Gonzalez testified that the main document on which she relied was the case
document, she also testified that she relied on correspondence, contract clauses, regulations, and
the advice of others.  And, although Ms. Gonzalez did not testify to her attendance at this
particular meeting, she did testify that she consulted with the Corps' technical staff.  Thus, the

court is not prepared to conclude that Ms. Gonzalez contradicted her deposition testimony in paragraph three of her declaration.

In paragraph four of her declaration, Ms. Gonzalez states that prior to issuing the contracting officer's decision, she "became familiar with all facts and proposed conclusions contained in the draft . . . ." Atkins and MACTEC contend that this statement is contrary to Ms. Gonzalez's deposition testimony, which reflects that Ms. Gonzalez was unaware that portions of the decision were taken from the report of an expert hired by the Corps. However, obtaining familiarity with the facts and conclusions forming the basis of a contracting officer's decision does not require knowing the ultimate origin of those facts and conclusions. It merely requires knowing what the facts and conclusions are. See, e.g., The American Heritage College Dictionary 502 (4th ed. 2004) (defining "familiar" as "[h]aving fair knowledge; acquainted"). Ms. Gonzalez did not need to know that portions of the decision were derived from an expert report so long as she was acquainted with those portions of the decision. Thus, the court is not prepared to conclude that Ms. Gonzalez contradicted her deposition testimony in paragraph four of her declaration.

Accordingly, unlike the declaration at issue in Texas National Bank, Ms. Gonzalez's declaration is not appreciably inconsistent with her deposition testimony. Therefore, the rationale set forth in Texas National Bank cannot be applied in this case to exclude Ms. Gonzalez's declaration. See, e.g., S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 496 (5th Cir. 1996) ("When an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment."); Clark v. Resistoflex Co., a Div. of Unidynamics Corp., 854 F.2d 762, 766 (5th Cir. 1988) (allowing consideration of an "affidavit drafted to defeat summary judgment" that supplemented, rather than contradicted, earlier deposition testimony). However, the court is troubled by certain aspects of defendant's proffer of the declaration.

One cause of the court's concern is the timing of the declaration. See, e.g., City of St. Joseph, Mo. v. Sw. Bell Tel., 439 F.3d 468, 476 (8th Cir. 2006) ("[T]he City's filing of Sparks's affidavit on the same day that the City's Suggestions in Opposition to Defendant's Motion for Summary Judgment were due is highly suspicious. The timing of the affidavit, combined with the aforementioned factors, indicate that the City engaged in a last-minute effort to create a genuine issue of material fact to prevent the district court's entry of summary judgment in [defendant's] favor."); Interim Investors Comm. Holding Claims Against Fin. & Bus. Servs., Inc. v. Pavlico, 914 F.2d 1491 (4th Cir. 1990) (unpublished per curiam table decision) ("[T]he bankruptcy court did not abuse its discretion by refusing to consider the Pavlicos' affidavits, filed on the eve of the summary judgment hearing, as an abuse of the discovery process."). Ms. Gonzalez issued the contracting officer's decision on March 28, 2008. Approximately one year and seven months later, on October 22, 2009, PBS&J deposed Ms. Gonzalez for the express purpose of determining the basis of the decision. See App. 141-43. Defendant did not cross-examine or otherwise elicit any testimony from Ms. Gonzalez during the deposition, but instead, more than two years later, procured the declaration to expand on or clarify her testimony.

-13-

Because Ms. Gonzalez made assertions in her declaration almost four years after the events they address, their reliability is not assured.  And, the declaration contains statements that could have been, but were not, elicited by defendant–and fleshed out by PBS&J–during the deposition that was expressly aimed at discovering the basis of the contracting officer's decision.

A second cause of the court's concern is the conclusory nature of two statements in paragraph four of the declaration.  See, e.g., Applied Cos. v. United States, 144 F.3d 1470, 1475 (Fed Cir. 1998) ("It is well settled that 'a conclusory statement on the ultimate issue does not create a genuine issue of fact.'" (quoting Imperial Tobacco Ltd., Assignee of Imperial Grp. PLC v. Philip Morris, Inc., 899 F.2d 1575, 1581 (Fed. Cir. 1990))); United States v. Thorson Co., 806 F.2d 1061, 1066 (Fed. Cir. 1986) (rejecting a contracting officer's conclusory statement set forth in an affidavit).  To determine the ultimate issue presented in the parties' cross-motions for summary judgment–the validity of the contracting officer's decision issued by Ms. Gonzalez–the court must determine, among other things, whether the undisputed facts demonstrate that Ms. Gonzalez adopted the facts and conclusions in the decision as her own, and that the decision therefore represented her independent judgment.  Ms. Gonzalez's assertions that she adopted the facts and conclusions in the decision as her own and that the decision represents her independent judgement are nothing more than conclusory statements on the precise issues that the court must resolve.

Due to these concerns, the court will disregard Ms. Gonzalez's declaration in ruling on the parties' cross-motions for summary judgment.

### 3.  The March 28, 2008 Contracting Officer's Decision

In their motion for summary judgment, Atkins and MACTEC contend that the contracting officer's decision issued by Ms. Gonzalez is invalid because Ms. Gonzalez did not draft the decision, independently analyze the facts and claims at issue, review any documentation supporting the claims, or consider information submitted by PBS&J.  In other words, they contend that Ms. Gonzalez did not exercise independent judgment in rendering the decision.  Defendant disagrees, arguing that the contracting officer's decision was that of Ms. Gonzalez.

In support of their position, Atkins and MACTEC rely on the analysis in Fireman's Fund Insurance Co.[10]  In that case, the contractor performed out-of-order work with the permission of

---

[10]  Atkins and MACTEC characterize the decision in Fireman's Fund Insurance Co. as the controlling law in this circuit.  They are incorrect.  The controlling decisional law in this circuit is developed by the United States Supreme Court and the United States Court of Appeals for the Federal Circuit.  See FCC v. Pottsville Broad. Co., 309 U.S. 134, 140 (1940) ("[A] lower court is bound to respect the mandate of an appellate tribunal and cannot reconsider questions which the mandate has laid at rest."); Coltec Indus., Inc. v. United States, 454 F.3d 1340, 1353 (Fed. Cir. 2006) ("There can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court, and our predecessor court, the Court of Claims.").

the contracting officer.  92 Fed. Cl. at 690.  At the time of the work and thereafter, the
contracting officer considered the work to be for the benefit of both the contractor and the
government, and did not contemplate seeking a credit for the government for the time saved on
the contract.  Id.  However, on the eve of trial in the Court of Federal Claims, and at the behest of
agency counsel, the contracting officer determined that a claim for a credit was appropriate.  Id.
at 690-91.  She therefore issued a decision asserting government entitlement to a credit, which
served as the basis for a counterclaim in the lawsuit.  Id. at 691.  The contractor subsequently
argued that the decision was invalid because "it was not the product of the independent exercise
of the contracting officer's judgment," but rather "was prepared in its entirety by defense counsel
in anticipation of trial, which the contracting officer merely rubber-stamped."  Id. at 692.

     Reviewing the testimony elicited at trial, the court in Fireman's Fund Insurance Co. found
that although the contracting officer acknowledged that there was a process to follow prior to
issuing a contracting officer's decision, the contracting officer did not follow the process.  Id. at
697.  It noted that the contracting officer (1) did not draft the decision;[11] (2) made no changes to
the decision drafted by agency counsel before she signed it; (3) discussed the decision with
counsel and the administrative contracting officer for less than one hour and only to verify that
they were seeking a time credit; (4) did not seek to verify the length of time that was purportedly
saved and instead relied on the calculations on others; (5) did not review project schedules; (6)
did not independently verify, or ask the administrative contracting officer whether he verified, the
accuracy of the findings of fact; and (7) did not review the documents appended to the decision.
Id.  Accordingly, the court concluded:

     Plaintiffs were entitled to a fair and impartial final decision by the
contracting officer.  FAR 1.602-2(b).  Defendant could not demonstrate that the
counterclaim was the product of either [the contracting officer's] own analysis or
that she relied on the technical input of the administrative contracting officer.  Her
testimony portrayed an orphan decision that she signed because her legal team
recommended it.  The claim was entirely developed by counsel, with some
information from [the administrative contracting officer], and [the contracting
officer] acquiesced in [agency counsel's] guidance.  What attention she gave the
final decision was not a substantive review and analysis of the claim's merits or a

---

Prior decisions of the Court of Federal Claims, "while persuasive, do not set binding precedent
for separate and distinct cases" in the Court of Federal Claims.  W. Coast Gen. Corp. v. Dalton,
39 F.3d 312, 315 (Fed. Cir. 1994).

    [11] Ms. Gonzalez cannot be criticized for not drafting the contracting officer's decision.
As noted above, the EFARS requires a contracting officer's decision to be drafted by an attorney
from the Corps' office of counsel.  Had this same EFARS been in effect at the time that the
relevant events in Fireman's Fund Insurance Co. occurred, the court in that case would not have
criticized the contracting officer for failing to draft the decision because such criticism would
have been contrary to law.

review of the technical input; rather, she merely understood the nature of the claim asserted in the decision. Such a decision hardly can be elevated to the product of the exercise of the contractor officer's independent judgment.

Id. at 698. It therefore held that the contracting officer's decision was invalid and dismissed the counterclaim.

Defendant, in turn, analogizes the facts in this case to those presented in Pacific Architects & Engineers Inc. In that case, the contracting officer issued a decision denying the contractor's claim for additional compensation under the contract. 491 F.2d at 738. On appeal from the contract appeals board, the contractor argued that the decision was not a result of the contracting officer's independent judgment but was instead dictated to him by others. Id. at 738, 744. The contracting officer had testified before the board that he made an offer to the contractor to settle its claim based on his reading of a court decision, but that legal counsel subsequently advised him that his interpretation of the court decision was incorrect. Id. at 745. The contracting officer stated that he "went along" with this advice, withdrew the offer, and issued the challenged contracting officer's decision. Id. Analyzing this testimony, the United States Court of Claims ("Court of Claims") concluded that there was substantial evidence to support the board's finding that the contracting officer's acceptance of legal advice did not mean that he did not exercise independent judgment in rendering his decision. Id. at 745-47.

The court finds neither decision cited by the parties to be directly on point. Contrary to the egregious circumstances in Fireman's Fund Insurance Co., where the court was faced with a contracting officer's decision issued as a litigation tactic, Ms. Gonzalez issued the decision in this case prior to the commencement of any litigation. And, while the court in Pacific Architects & Engineers Inc. was concerned solely with the legal advice obtained by the contracting officer, more than just legal advice is at issue here. Thus, the court is unwilling to apply either of the analyses advanced in these two decisions to this case outright. Instead, the court's analysis is derived, as it must be, from the express terms of the regulations implementing the CDA.

Under the CDA, the contracting officer, not some other official, is required to issue the contracting officer's decision. However, as noted in the legislative history of the CDA, "practicability dictates that the extent to which the contracting officer relies on his own judgment or abides by the advice or determination of others is dependent on a variety of factors, including the officer's personal knowledge, capability, and executive qualities, as well as the nature of the particular procurement." S. Rep. No. 95-1118, at 21. In an acknowledgment that contracting officers may not have the personal knowledge or capability to make certain determinations, the FAR requires them to secure assistance from the pertinent advisors; in other words, to request and consider the advice of accountants, attorneys, engineers, and other specialists. The Corps implements the requirements of the CDA and the FAR by specifying that a contracting officer's decision must be drafted by counsel with technical assistance from appropriate staff members, and that before the contracting officer issues the decision, she should familiarize herself with the facts and proposed conclusions in the decision and either adopt the facts and conclusions as her

own or make appropriate changes.  If the contracting officer complies with the requirements of the FAR and the EFARS in issuing a decision, then the decision represents the contracting officer's independent judgment.

There is no dispute that, pursuant to the EFARS, an attorney from the office of counsel, with the engineering and financial advice of other Corps employees, prepared a draft contracting officer's decision.  Rather, Atkins and MACTEC question whether Ms. Gonzalez familiarized herself with the facts and proposed conclusions contained in the decision drafted by counsel and whether Ms. Gonzalez adopted those facts and conclusions as her own.

With respect to the first issue, both the Court of Federal Claims and the boards of contract appeals have provided multiple examples of what does, and what does not, constitute familiarization with the facts and conclusions contained in a contracting officer's decision.  The Court of Federal Claims concluded in CEMS, Inc. that the contracting officer was not familiar with the facts contained in the contracting officer's decision prepared by another individual because he (1) did not know whether the other individual had conducted a critical path analysis or interviewed potential witnesses; (2) was unaware that the decision contained information directly contradicted by information supplied by the contractor; (3) did not consider other evidence submitted by the contractor; (4) could not explain why the contractor was not interviewed regarding ambiguities; (5) was unfamiliar with back-up documentation; and (6) actually denied contractor claims in which the government had admitted error.  65 Fed. Cl. at 479-80.  In North Star Alaska Housing Corp., the court concluded that one of the contracting officers had abdicated his responsibility to make an independent decision when he (1) did not personally investigate many of the contractor's claims; (2) ruled against the contractor without reviewing all of the documentation; and (3) incorrectly presumed that the government's explanation of its position on a particular issue had been provided to the contractor.  76 Fed. Cl. at 211.  And, as noted above, the court in Fireman's Fund Insurance Co. held that the contracting officer did not give the contracting officer's decision sufficient attention because she (1) only discussed the decision with counsel and the administrative contracting officer for less than one hour and only to verify that they were seeking a time credit; (2) did not seek to verify the length of time that was purportedly saved and instead relied on the calculations on others; (3) did not review project schedules; (4) did not independently verify, or ask the administrative contracting officer whether he verified, the accuracy of the findings of fact; and (5) did not review the documents appended to the decision.  92 Fed. Cl. at 697-98.

Turning to the contract appeals boards, the Interior Board of Contract Appeals concluded, in Marshall Associated Contractors, Inc., IBCA 1901 et al., 2001-1 BCA ¶ 31,248, that the contracting officer did not give the contractor's claims the full consideration they deserved because he did not review any of the contractor's claim material or any reports from his own technical personnel regarding the claims.  In Jamco Constructors, Inc., 94-1 BCA at ¶ 26,405, the Veterans Affairs Board of Contract Appeals concluded that the contracting officer did not make an adequate inquiry when he terminated the contractor for default because he (1) made no attempt to determine what work had been completed or to reconcile contradictory information

regarding the completion rate of the contract; (2) did not compare the contractor's actual progress with its progress schedule; (3) did not examine why there were such disparate government estimates for the time to complete the contract, but instead uncritically accepted the longer estimate; and (4) provided no explanation for his conclusion that another contractor could finish the work in a timely manner. In contrast, the Agriculture Board of Contract Appeals in <u>Gibson</u>, AGBCA 88-139-1, 93-2 BCA ¶ 25,615, concluded that even though the contracting officer was unaware of a relevant fact when he signed the decision, he properly rendered the decision because, among other things, he read the decision in detail. And, in <u>Prism Construction Co.</u>, ASBCA Nos. 44682 et al., 97-1 BCA ¶ 28,909, the Armed Services Board of Contract Appeals noted that the contracting officer did not independently verify the facts provided to him by his subordinates because those subordinates had first-hand knowledge, and ultimately held that "[t]here is no requirement that a contracting officer independently investigate the facts of a claim."

It is readily apparent that there is no rigid test for determining how a contracting officer becomes familiar with the facts and conclusions in a contracting officer's decision. Reflecting that there is no one-size-fits-all approach, the adjudicative bodies that have addressed the issue have reached disparate, and sometimes, contradictory, conclusions regarding what factors are dispositive in this inquiry. Thus, rather than compare what Ms. Gonzalez did and did not do with what the contracting officers did and did not do in other cases, the court focuses on whether, in the particular circumstances presented in this case, Ms. Gonzalez satisfied the CDA, FAR, and EFARS by becoming familiar with the facts and conclusions contained in the draft contracting officer's decision, such that the decision she issued was, in fact, her product and reflected her independent judgment.

Ms. Gonzalez testified during her deposition that when reviewing the draft contracting officer's decision, she referred to and relied on the case document and correspondence between the Corps and PBS&J, consulted with the attorney who drafted the decision, and consulted with the Corps' technical staff. On the other hand, she testified that she did not review or rely upon the expert report, materials prepared by the Corps in connection with the project, drawings or photographs, field data, progress meeting notes or minutes, cost estimates or supporting data, or materials submitted by PBS&J. She also did not conduct a site visit, perform any tests or calculations, or interview anyone from PBS&J or the Corps.

Despite what Ms. Gonzalez did not do when reviewing the draft contracting officer's decision, the evidence before the court reflects that what she did do is sufficient to establish that she was familiar with its facts and proposed conclusions. As explained above, familiarity is not a high standard to meet. It merely requires an acquaintance with the facts and conclusions in the decision. It does not require an investigation into the basis of the facts, particularly when the facts are prepared by others with greater knowledge than the contracting officer. Nor does it require a probing into the basis of the conclusions, especially when those conclusions are of a technical nature outside the scope of the contracting officer's knowledge and expertise. Ms. Gonzalez reviewed the facts and proposed conclusions contained in the draft decision, compared

-18-

them with the facts and conclusions contained in the case document, and discussed them with counsel and technical staff.  These actions are what one would expect from someone familiarizing herself with the contents of a contracting officer's decision.  Ms. Gonzalez was not required to take any additional action; thus, her failure to do so does not render her treatment of plaintiff unfair or inequitable.[12]  Given that the facts demonstrate that she satisfied the CDA, FAR, and EFARS, Ms. Gonzalez cannot be penalized for not doing something that she was not required to do.

The court's conclusion that Ms. Gonzalez familiarized herself with the facts and conclusions in the contracting officer's decision is not altered by the fact that she was unaware that certain parts of the decision were derived from an expert report.  The relevant portions of the expert report were incorporated into the draft decision by the attorney who prepared the draft.  Ms. Gonzalez was entitled to assume that the attorney had obtained the information in the draft from appropriate sources because the attorney, like all government officials, is presumed to have performed her duties correctly and in good faith.  See Schism v. United States, 316 F.3d 1259, 1302 (Fed. Cir. 2002) (en banc) ("This presumption of regularity is the supposition that public officers perform their duties correctly, fairly, in good faith, and in accordance with law and governing regulations, and is valid and binding unless 'well-nigh irrefragable proof rebuts or overcomes it.'" (citation omitted) (quoting Alaska Airlines, Inc. v. Johnson, 8 F.3d 791, 795 (Fed. Cir. 1993))).  And, although it is not reflected in Ms. Gonzalez's testimony, it bears noting that the information derived from the expert report was consistent with the information contained in the case document.

Having become familiar with the facts and conclusions set out in the contracting officer's decision, Ms. Gonzalez was then required to make any appropriate changes or adopt them as her own.  On this issue, there is binding precedent.  In Pacific Architects & Engineers Inc., the Court of Claims held that a contracting officer is not prohibited from "agreeing with the views of others."  491 F.2d at 744.  Indeed, it concluded that a contracting officer made an independent decision even though he–as he was entitled to do–obtained, considered, and accepted the advice of counsel.  Id. at 745-47.

---

[12]  In reaching this conclusion, the court is not foreclosing Atkins and MACTEC from later alleging, and attempting to prove, that Ms. Gonzalez did not act fairly, impartially, or equitably on the grounds that "there is no substantial basis in the contract to support [her] ruling, or no substantial evidence to support it, or . . . [her] decision is grossly erroneous . . . ."  Penner Installation Corp., 89 F. Supp. at 547; see also id. at 548 ("In considering whether or not the contracting officer has acted impartially it is, of course, proper to take into consideration in any case, whether or not actual bias is shown, the correctness of his findings, his relationship to the parties, the allegiance he avows, and the duties his employment by one of them casts upon him." (emphasis added)).  This is a question that can be resolved only after consideration of the merits of Atkins's suit.

Ms. Gonzalez testified that prior to issuing the contracting officer's decision, she reviewed various materials, including the case document, consulted with counsel and technical staff, made certain typographical changes, and, importantly, agreed with the findings set forth in the case document.  In fact, she explicitly stated that the decision represented her independent findings.  When faced with similar circumstances, the Agriculture Board of Contract Appeals concluded that it was "clear that while the [contracting officer] was not the primary decision maker and had little or no role in actually preparing the decision, he read it in detail, consulted with others within the agency, and agreed with the decision before signing it."  Gibson, 93-2 BCA at ¶ 25,615.  In another case, the board similarly concluded that even though an attorney drafted the decision, the contracting officer rendered his own decision, remarking: "Most significantly, the [contracting officer] did not disagree with the decision, made changes to it, and signed the decision.  If he had disagreed with it, he would have argued against it."  PLB Grain Storage Corp., AGBCA 89-152-1 et al., 92-1 BCA ¶ 24,731.  The court agrees with the board's analyses in these two cases and concludes that by reviewing the draft decision, consulting with others at the Corps, and agreeing with the findings in the draft decision, Ms. Gonzalez adopted the facts and conclusions set forth in the draft decision and made them her own.

In sum, because the undisputed facts show that Ms. Gonzalez familiarized herself with the facts and proposed conclusions in the draft contracting officer's decision and adopted those facts and conclusions as her own, the contracting officer's decision she issued on March 28, 2008, represented her independent judgment.

### III.  CONCLUSION

Because Ms. Gonzalez issued a valid contracting officer's decision, the court **DENIES** the motion for summary judgment filed by Atkins and MACTEC and **GRANTS** the motion for partial summary judgment filed by defendant.  The parties shall continue with discovery as set forth in the court's November 21, 2011 order.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge

-20-